**ACKER et al. v. SCHULTE et al.**

**SCHMOLKA et al. v. SAME.**

District Court, S. D. New York.

May 26, 1947.

Archibald Palmer, of New York City (Samuel Masia, of New York City, of counsel), for plaintiffs.

Gale, Bernays, Falk & Eisner, of New York City (Murray C. Bernays and Ellis J. Freedman, Both of New York City, of counsel), for defendant David A. Schulte.

Hirson, Bertini & Rothenberg, of New York City (Max L. Rothenberg, of New York City, of counsel), for defendant Park & Tilford, Inc.

Delson, Levin & Gordon, of New York City (I. Cyrus Gordon, of New York City, and Edward Marks, of Freehold, N. Y., of counsel), for defendants Ira Haupt and others, doing business as Ira Haupt & Co.

Roger S. Foster, Sol., Robert S. Rubin, Asst. Sol., and W. Victor Rodin, all of Philadelphia, Pa., for Securities and Exchange Commission, amici curiae.

CAFFEY, District Judge.

There are five motions by the defendants, Schulte, Park & Tilford, Inc., and Ira Haupt & Company, to require the plaintiffs to give security for costs, including reasonable attorneys' fees, pursuant to the provisions of Section 9(e) of the Securities Exchange Act of 1934, Section 78i (e), Title 15 U.S.C.A. Schulte asks for security of $25,000 in the Acker case and $15,000 in the Schmolka case. Park & Tilford, Inc., ask for security of $25,000 in the Acker case and $10,000 in the Schmolka case. Ira Haupt & Company ask for security of $25,000 in the Acker case. They have made no motion in the Schmolka case. All motions were argued together and, as they all involve the same questions, they will be disposed of in one opinion.

The amended complaints in the two cases are identical in all material respects, except as to the amount of damages claimed by each plaintiff. The actions are alleged to have been brought under Sections 9(e) and 10(b) of the Act and Rule X–10 B–5 adopted by the Commission under Section 10. The defendants base their claims to security principally upon the assertion that the actions were not brought in good faith.

The complaints allege that the defendant Schulte was a director of Park & Tilford, which was engaged in the business of importing, manufacturing and distributing whiskey, and owned, personally and through a family trust controlled by him, a majority of its outstanding common and voting stock and thereby was in a position to control its policies and the selection of its directors; that the common stock of Park & Tilford was listed and traded in on the New York Stock Exchange which was a national securities exchange, registered as such under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78(f); that on February 11, 1939, a judgment had been entered in this court in an action brought by the Securities and Exchange Commission against Schulte, enjoining him from, directly or indirectly, raising the price of the stock of Park & Tilford through any medium or means forbidden by the Act; and that the defendant partnerships, Ira Haupt & Co. and Strauss-Phillips & Co., were stockbrokers and members of the New York Stock Exchange.

It is then alleged that in September and October, 1943, in violation of Sections 9(e) and 10(b) of the Act and Rule X–10 B–5 and the judgment aforesaid, Schulte, with the active and knowing aid and assistance of the other defendant used the mails and the facilities of the New York Stock Exchange and the memberships of the defendant partnerships therein, by purchasing common stock of Park & Tilford for the purpose of inducing others to purchase the same and by circulating information that the price of the stock was likely to rise because of such purchases, and that, as the result thereof, the market price did rise from $17 to $40 per share.

It is further alleged that in November, 1943, the American Distilling Company, whose stock was also listed on the New York Stock Exchange and which was also

engaged in the manufacture and distribution of whiskey, publicly declared that it would, and thereafter it did, effect a distribution of all its whiskey inventory by way of a dividend upon its common stock, and that the result of the declaration of such dividend and the distribution of such inventory was to cause an increase in the price of its stock from $74 to $160 per share.

The complaints then allege that Schulte, from November, 1943, to May, 1944, for the purpose of inducing others to purchase common stock of Park & Tilford and thereby to increase the market price thereof and also of enabling him and his associates to dispose of the stock acquired, as aforesaid, as well as stock which he and his family trust had previously held, at heightened and artificial prices, represented directly and through members of the defendant stock brokerage firms, officers and directors of Park & Tilford, and others, in violation of Section 10(b) and Rule X–10 B–5; that Park & Tilford was about to declare and recommend a dividend in the same manner as declared by the American Distilling Company, which dividend, upon payment thereof, would enable the stockholders of Park & Tilford to make a profit of $50 per share; that such representations, at the time and in the light of the circumstances under which they were made, were false and misleading in many material respects which are set forth, as the defendant knew or had reasonable grounds to believe; and that the effect of such false representations was to induce purchases of the stock of Park & Tilford at constantly increasing prices, so that the price rose to $98¼ per share on May 26, 1944, and, during this period, Schulte and his family trust and the other defendants were able to sell the stock acquired by them and about 117,000 shares theretofore owned by Schulte and his family trust at profits aggregating $7,000,000.

It is then alleged that the plaintiffs, at various dates from November 23, 1943, to June 2, 1944, purchased varying amounts of stock at prices ranging from 49½ to 97½, which prices were artificially fixed and affected by the said acts and transactions of the defendants, and that the actual value of the stock during this period was only $34 per share.

Finally, it is alleged that on May 26, 1944, a plan for the declaration of an alleged dividend, payable in the form of a distribution of whiskey under certain conditions, was released to the holders of common stock of Park & Tilford, which was not in compliance with the representations in a number of respects which are set forth; that, by reason of all the foregoing, the stock, after May 26, 1944, began to lose its market value until it was selling at $34 per share on February 1, 1945, and the plaintiffs have sustained damages aggregating $110,601.75 in the Acker suit and $31,656.09 in the Schmolka suit.

The Acker suit was filed on February 6, 1945, and the Schmolka suit on May 25, 1945.

■ It is abundantly clear that these complaints state good causes of action under both Sections 9(e) and 10(b) of the Act. That such an action as this will lie under Section 10(b), see Kardon v. National Gypsum Co., D.C.E.D.Penn., 69 F. Supp. 512.

The principal arguments advanced by the moving defendants in support of their assertions that these suits were not instituted in good faith are that Paragraph 26 in the original complaints is not included in the amended complaints and that the original complaints alleged that the actions were brought pursuant to the provisions of the Securities Exchange Act of 1934, without reference to any particular section thereof.

Paragraph 26 in the original complaints is as follows: "That by reason of the failure of said alleged dividend to comply with the representations made the same was of no value to the plaintiffs herein and to other stockholders and in consequence thereof the plaintiffs and other stockholders did not avail themselves thereof and the dividend on said stock lapsed."

It is claimed that these allegations are untrue and that this paragraph was omitted from the amended complaints because their untruthfulness was shown in affidavits submitted at the time the motions were first made (they have been adjourned a number

of times), in which it was pointed out that all the plaintiffs in the Acker suit, except four, had assigned their whiskey purchase warrants prior to the institution of the suit, that they had a value of $3.46 each on February 6, 1945, and that the warrants would not expire until May 15, 1946, (as, indeed, appears clearly from the announcement to the stockholders of Park & Tilford, a copy of which was annexed to the original complaint). It also appears from a subsequent affidavit that the other plaintiffs in the Acker suit had assigned their warrants prior to the filing of the amended complaint.

The courts have never attempted to delimit the boundaries of the term "bad faith". It is a term which can be defined only with reference to the facts and circumstances of the particular situation. But it can be said that it includes the element of wrongful intent to some degree and does not consist of mere negligence or failure to inquire, unless the law imposes a duty to inquire.

A pertinent illustration is to be found in Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 6 Cir., 73 F. 653. That was an action on a life insurance policy. A Pennsylvania statute, which controlled the construction of the policy, provided that no misrepresentation in the application for the policy should avoid it, unless it was either made in bad faith or was material to the risk. In his application the insured stated that he had three other policies on his life aggregating $16,000 but he omitted a fourth policy for $5,000. In an opinion by Judge Taft, the court held that the trial court had not erred in refusing to charge the jury that this misrepresentation avoided the policy, because necessarily made in bad faith, even if it was not material to the risk. The opinion is well worth reading. Only the headnote will be quoted (73 F. at page 653), viz.: "A statutory provision that no immaterial misrepresentation in the application shall avoid the policy unless it is made 'in bad faith' * * * means with an actual intent to mislead or deceive, and does not include a misstatement, honestly made, through inadvertence, or even gross forgetfulness or carelessness." See, also,

Browning v. Fidelity Trust Co., 3 Cir., 250 F. 321, 325.

Was paragraph 26 included in the original complaints with an actual intent to mislead or deceive? The allegations therein clearly seem to be false; in fact, plaintiff's attorney does not contend otherwise. The complaints were not verified by any of the plaintiffs but were signed by their attorney, as permitted by Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. His signature constituted a certificate that he had read the pleading and that, to the best of his knowledge and belief, there was good ground to support it (Rule 11). For a wilful violation of the rule he may be disciplined. The complaints, of course, were prepared by him—from information furnished by his clients and obtained from other sources. It may well be that his clients did not tell him that they had assigned their whiskey purchase warrants. Perhaps, he should have made such specific inquiries of them. But at the most his failure to do so was forgetfulness or carelessness.

Many attorneys have had the unhappy experience of hearing their clients testify, under cross-examination, to facts which their clients had not told them. The final statement that "the dividend on said stock lapsed" is rather ambiguous. It may have been added merely to state a conclusion from the facts previously alleged in the paragraph. If, however, it was intended to be an allegation of an independent fact, it was obviously untrue, for the announcement to the stockholders plainly stated in several places that they had the right to purchase whiskey under the whiskey purchase agreements until May 15, 1946. Plaintiffs' attorney says the inclusion of this paragraph in the original complaint was a mistake, not made in bad faith, although it is hard to see how it could have been only a mistake, if he had made any study of the announcement. Whether or not that is true cannot be determined from the papers before me. It must be left to the trial for whatever bearing it may then have.

 Paragraph 26 relates to the damages which plaintiffs claim to have sus-

tained. Whether or not they had parted with their whiskey purchase warrants prior to bringing suit is relatively unimportant. If the warrants had been sold, the amounts realized would have to be credited on the cost of their stock, reducing their damages accordingly. If they had not been sold, their value as of the day on which damages are to be ascertained must likewise be taken into account. There seems to have been a market for the warrants at all times. The allegations in this paragraph do not go to the gist of the causes of action; the complaint would seem to be sufficient without them. The inclusion of this paragraph in the original complaints, in my opinion, does not show that the actions were brought in bad faith.

■ The other argument in support of the claim of bad faith—that the original complaints failed to allege that the actions were brought pursuant to any particular section of the Securities Exchange Act— is without merit. The allegations that the actions were brought pursuant to the provisions of the Act were sufficient. Grand Trunk Western R. Co. v. Lindsay, 233 U.S. 42, 48, 34 S.Ct. 581, 58 L.Ed. 838; Missouri, K. & T. R. Co. v. Wulf, 226 U.S. 570, 575, 576, 578, 33 S.Ct. 135, 57 L.Ed. 355; Kansas City Western R. Co. v. McAdow, 240 U.S. 51, 53, 54, 36 S.Ct. 252, 60 L.Ed. 520; Abounader v. Strohmeyer & Arpe Co., 243 N.Y. 458, 462, 463, 154 N.E. 309.

Section 9(e) provides that "Any person who willfully participates in any act or transaction in violation of subsection (a), (b), or (c) of this section shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue in law or in equity in any court of competent jurisdiction to recover the damages sustained as a result of any such act or transaction."

This section provides "for more unrestricted recovery than would be possible at common law" (dissenting opinion of Clark, J., in Baird v. Franklin, 2 Cir., 141 F.2d 238, 245 right column near top). It does away with the requirement of the common law that the injured person must allege and prove his knowledge at the time of the wrongful act—manipulation or misrepresentation—and his reliance thereon.

Section 9(e) further provides that "In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant."

The Senate Committee on Banking and Currency in its report on the bill (Senate Report 792, 73rd Congress, 2d Session, p. 18) stated that "in order to give protection against 'strike' suits or litigation brought in bad faith, the court is authorized to assess reasonable costs, including attorneys' fees, against either party to the suit, and even to require in advance an undertaking for the payment of such costs."

In their brief, submitted as amicus curiae, the attorneys for the Securities and Exchange Commission say that this provision "should not be so contrued as, in effect, to nullify opportunity for relief" that "the burden should be upon the party seeking security for costs to show by clear, strong, tangible evidence that the suit is brought in bad faith. If speculative assertions and conjecture should be enough, defendants in such suits will have a readily available means of erecting barriers to recovery by aggrieved investors that "the bringing of such suits should not be discouraged except where there is a clear showing of lack of merit. The rules with respect to summary judgment appear to be relevant," and finally that "there must be a substantial showing of bad faith on the part of the complainant—a clear indication of lack of a meritorious cause of action because of the way it is pleaded, or because of inability to prove up the cause of action, or because of extraneous circumstances showing bad faith."

The attorney for the plaintiffs takes much the same position as the attorneys for the Commission.

The attorneys for the defendants, however, insist that the burden should be on the plaintiffs to present overwhelming proof supporting their complaints and to "make such a convincing showing of merits as to enable the court to say that a judgment is bound to follow." They argue

that the removal of many of the safeguards of the common law has opened the way for any disgruntled purchaser, a total stranger to those whom he may sue and who have made no direct representations to him, to bring suit to recover his loss, relying upon one of the rumors with which Wall Street abounds or a sentence, however loosely or irrelevantly made; that Section 9(e) does not require a plaintiff to show good faith in his complaint; that, under the liberal rules of pleading, it is not too difficult to frame a good cause of action which will have no internal evidence of the characteristics of a "strike" suit or of having been brought in bad faith; and that the defendants in such a suit can rarely, if ever, furnish evidence of bad faith, the plaintiff being a total stranger. They further argue that, until the defendants know what proof plaintiffs rely on and which is not vouchsafed by the complaint, the defendants have no way of appraising, or even discussing, the merits, and, if the requirement of an undertaking is to be limited to "those cases where the complaint is vulnerable on its face, then the congressional intent to afford some protection against unfounded claims would be completely frustrated." And, finally, that "Section 9(e) lends itself so readily to widespread abuse that almost nothing can be said against the court's exercise of its discretion to order the giving of an undertaking."

Which of these opposing views should prevail? I find nothing in the Act itself to aid in solving the problem. The general principle is that under our system of jurisprudence a person who seeks to enforce a claimed right has the burden of showing that he is entitled to it, no matter how difficult it may be; the burden is not upon the person who opposes the right to show that the other is not entitled to it. Henry H. Cross v. Simmons, 8 Cir., 96 F. 2d 482, 486. Applying this principle here the burden rested on the defendants to show either that the actions were brought in bad faith or that they lacked merit.

I have already held that the defendants have not shown bad faith and, in my opinion, it cannot be said that these suits lack merit. The gravamen of the amended complaints is the manipulation by Schulte of the market on the New York Stock Exchange for the common stock of Park & Tilford, and material misrepresentations by him, with the knowing assistance of the two partnership defendants, members of that Exchange. That there was much manipulation appears from the facts found in prior litigations in which he was involved, viz., Kogan v. Schulte, D.C.S.D. N.Y., 61 F.Supp. 604, Park & Tilford, Inc. v. Schulte, 2 Cir., 160 F.2d 984, and matter of Ira Haupt & Co., 1946, Securities Exchange Act Release No. 3845. While those findings would not be admissible as evidence in these suits, they indicate the facts which plaintiffs here will be able to prove. If plaintiffs make proof of the other facts alleged in their complaint it is clear that their suits do not lack merit. In fact, I find in the papers no serious contention by the defendants that the actions are not meritorious. They do not discuss the merits at all. Answers have not yet been served and, while it is asserted that both Schulte and Park & Tilford will deny all the material allegations, that does not show that the actions are not meritorious. If the facts alleged as to manipulation and misrepresentations are not true, it would have been an easy matter for the defendants to have shown their falsity.

The only case involving the question as to the right of the defendants to security under Section 9(e), to which I have been referred, is the unreported case of Bach v. Quigan, D.C.E.D.N.Y.1945, decided by Judge Kennedy. I have not been furnished with a copy of his opinion, but plaintiffs' attorney says that he held merely that the question was a matter of discretion and that, under all the circumstances, he would require an undertaking in the sum of $7,-500 which, the attorneys for the defendant Schulte say, was in excess of the amount demanded in the complaint. Without fuller knowledge of the facts, I would not be justified in blindly following that case as a precedent.

In a stockholder's derivative action the question as to the right of the defendants to require the plaintiffs to give security for costs under Section 61-b of the New York

General Corporation Law, McKinney's Consolidated Laws, c. 23, was raised in the case of Craftsman Finance & Mortg. Co. v. Brown, D.C.S.D.N.Y., 64 F.Supp. 168. That section provides that in any such action, under certain conditions, "the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action," etc. In denying the motion Judge Leibell said at page 178 of 64 F.Supp. (bottom left column and top right column): "If the stockholder's charges are serious, specific and appear to have merit, the Court's discretion should not be exercised in such a way as to bar a trial of the issues. To follow such a course, might grant a delinquent or dishonest corporate director and his accomplices immunity from suit. In nearly all stockholders suits the motives of the plaintiff and his attorney are attacked. It is generally charged that the suit has been brought merely to enable the plaintiff's attorney to get a fee, that the stock interest of the plaintiff is infinitesimal, and that the defense of the action will require the directors to expend large sums for which the corporation itself may be liable if the directors are successful in their defense. Sometimes there is a sound basis for that criticism, and in such cases it may be advisable to require a substantial bond."

These observations are very pertinent in the case at bar.

Sixty-five years ago in Thannhauser v. Cortes Co., C.C.S.D.N.Y., 9 F. 225, Judge Brown in this court held that the plaintiffs should not be required to give extraordinary security for costs ($1,500 to $2,000) upon merely general averments that large disbursements would be incurred in taking testimony, although, as he said, the defendants' affidavits tended to show that the transaction complained of was fraudulent on plaintiffs' part. Judge Blatchford said at page 226 of 9 F.: "If, as defendants allege, the plaintiffs are insolvent, (though that is denied by them,) the court ought to be only the more cautious not to interpose any impediments in the way of their prosecuting any legal claim they may have except upon clear evidence of its necessity to protect the defendants' rights, and then to no greater extent than manifest necessity requires."

In Matter of Peloyger, 171 Misc. 1016, 14 N.Y.S.2d 190, 191, the Surrogate in discussing an amendment to Section 282 of the New York Surrogate's Court Act which provided that "Security for Costs may be required from any non-resident who is a petitioner in any proceeding, provided the surrogate finds specifically that such security is necessary for the protection of the estate," said in 171 Misc. at page 1017, 14 N.Y.S.2d at page 191: "* * * the exercise of such discretionary authority should ordinarily be predicated on a conclusion that the proceeding in question, if not 'wholly baseless,' is not one which is 'apparently meritorious,' but appears to be a 'strike' demand, which will be likely to subject the 'estate to large expense.'"

The claim that, because defendants and their counsel will be compelled to devote much time and to expend considerable sums in preparation and in the trial of these actions, security for costs in sufficiently large amounts to cover these estimated expenses should be required, is without legal basis, in the absence of a clear showing of bad faith or lack of merit. The defendant in any lawsuit, no matter how baseless it may be, must incur the expense of defending it, or suffer judgment by default. The only reimbursement which he can obtain from the plaintiff is the small amount of taxable costs. Here, if successful, he may obtain more, for Section 9(e) authorizes the court to "assess reasonable costs, including reasonable attorneys' fees, against either party litigant." But that obviously means only after the case has been tried.

In view of my disposition of these motions, it is not necessary to consider whether security can be ordered under Section 9(e) where the action is also maintainable under Section 10 which contains no provision authorizing the requiring of security for costs.

The motions are all denied. Settle order on two days' notice.