Robert **SCHAEFER** et al., Plaintiffs,

v.

The **FIRST NATIONAL BANK OF LIN-COLNWOOD** et al., Defendants.

No. 69 C 364.

United States District Court,
N. D. Illinois, E. D.

July 28, 1970.

Lawrence Walner, Rosner & Walner, S. John Templeton, Chicago, Ill., for plaintiffs.

Charles A. Laff, Chicago, Ill., for Harvey J. Olsher.

Donald J. Brooks, Chicago, Ill., pro se and for Dr. Charles Teicher.

Kangles, Schwarzbach & Preston by Constantine N. Kangles, Chicago, Ill., for Zafe Zafer.

Austin L. Wyman, Jr., Chicago, Ill., for Arthur C. Keller.

Bernard J. Nussbaum, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., for Hercules-Galion Prod.

Laser, Schostok, Kolman & Frank, Chicago, Ill., for Mildred Taub, Executor under the Will of Irving Taub.

George Siegel and Irwin I. Zatz, Chicago, Ill., for Blair & Co., Inc.

George B. Collins, Chicago, Ill., for Irving and Stuart Projansky.

Ira S. Kolb, Robert Dunn Glick, David N. Missner and Lloyd S. Kupferberg, Chicago, Ill., for Rodman & Renshaw.

Sidley & Austin, James E. S. Baker, Chicago, Ill., for Hertz and Warner & Co.

Dale, Haffner, Grow & Overgaard, Chicago, Ill., for Link, Gorman, Peck & Co.

Bell, Boyd, Lloyd, Haddad & Burns, Charles T. Martin, Chicago, Ill., for Hornblower & Weeks.

Arthur C. Keller, pro se.

John Powers Crowley, Howard L. Kastel of Altheimer, Gray, Naiburg, Strassburger & Lewton, Chicago, Ill., for Gerald Leavitt.

Carl N. Graf, Jr., Samuel Weisbard and Stephen C. Sandels, McDermott, Will & Emery, Chicago, Ill., for Murray Peltz.

Edward A. Wetzel, pro se.

Donald R. Harris and Ronald J. Clark, Jenner & Block, Chicago, Ill., for First Nat. Bank of Lincolnwood.

Lord, Bissell & Brook, Chicago, Ill., for Alen Epstein and First Hanover Corp.

Douglas C. Moir and Edward J. Wendrow, Winston, Strawn, Smith & Patterson, Chicago, Ill., for Reynolds & Co.

Charlotte Ziporyn, Samuel D. Freifeld, Chicago, Ill., for Spero Furla.

Daniel M. Schuyler, Edgar D. Ballard, and Bruce K. Roberts, Chicago, Ill., for Fred Weitz.

Jerome H. Stein, Chicago, Ill., for Michael Geier.

Morris J. Wexler, Chicago, Ill., for Morris Childs and Eva Childs.

## MEMORANDUM OPINION

DECKER, District Judge.

This is an action brought by purchasers of the stock of Hercules Galion Products, Inc. to recover damages for defendants' alleged conspiracy to manipulate the market for such stock. The complaint names stockbrokerage firms, their employees, and certain other individuals and corporations, alleging a detailed scheme whereby defendants are said to have created an artificially active market for Hercules Galion stock in order to raise its price so that certain defendants could sell their holdings at a profit. The complaint, brought as a class action, contains counts based on the securities laws, the anti-trust laws, and the doctrine of common law fraud.

A number of motions to dismiss have been filed. Those of general applicability will be considered first; then those relating to specific defendants or plaintiffs will be discussed.

*Count 1—The Securities Acts*

Count 1 of the complaint states that defendants have violated sections 9, 10 and 15(c) of the Securities Exchange Act of 1934 and sections 12(2) and 17 of the Securities Act of 1933. Section 9 of the 1934 Act and section 12(2) of the 1933 Act have their own express limitations periods, while the other cited sections have none. Actions brought pursuant to section 9 must be commenced "within one year after discovery of the facts constituting the violation and within three years after such violation," (§ 9(e)). Actions pursuant to section 12 (2) must be brought within one year after discovery of the untrue statement or omission, or after it should have been discovered, and within three years after the sale. (§ 13 of the 1933 Act.) The five year Illinois statute of limitations for fraud (83 Ill.Rev.Stat. § 16) applies, however, to actions brought under § 17 of the 1933 Act and § 10(b) of the 1934 Act. Morgan v. Koch, 419 F.2d 993 (7th Cir. 1969); Northern Trust Company v. Essaness Theaters Corporation, 103 F. Supp. 954 (N.D.Ill.1952); Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951).[1]

Many of the defendants in this cause were indicted for their alleged activity by a federal grand jury in New York in August, 1967. Because the complaint in this action was not filed until February, 1969, defendants contend that the action was commenced more than one year after discovery of the violation. They further argue that, since the alleged scheme falls within the prohibitions of § 9 and § 12(2), the other provisions of the Acts should not apply and therefore the one year time bar applicable to § 9 and § 12(2) requires dismissal of count 1.

Defendants' argument is logically persuasive. There is no dispute about their claim that the market rigging scheme alleged in the complaint is completely encompassed within the proscriptions of section 9 of the 1934 Act. To hold that the more expansive provisions of section 10(b) or section 17 apply, with their longer statutes of limitations, is to ignore the express limitations incorporated in the Act. And it assumes that the carefully inserted time limitation in section 9(e) was repealed, *sub silentio*, by passage of section 10(b) of the same Act, or was rendered meaningless *ab initio* by prior passage of the 1933 Act. Furthermore, it ignores the rationale of implied remedies under the Securities Acts enunciated in J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), where the Court made it clear that remedies were to be created when "necessary to make effective the congressional purpose." 377 U.S. at 433, 84 S.Ct. at 1560. When the congressional purpose has been congressionally implemented by statutory creation of remedies, as it was in §§ 9 and 12(2), the need for judicial implementation of its purpose is certainly diminished.

Despite these misgivings, however, I am constrained to hold that plaintiffs may maintain this action pursuant to section 10(b), Rule 10b–5, and section 17. Such a holding is dictated by the decision of this Circuit's Court of Appeals in Jordan Building Corporation v. Doyle, O'Connor & Co., 401 F.2d 47 (7th Cir. 1968). The plaintiffs in that action sued brokerage houses, their employees, and the issuing corporation claiming that defendants fraudulently induced them to purchase certain debentures. The District Court dismissed count 1, which was premised on a violation of Rule 10b–5, because of its conclusion that the allegations of the complaint fell squarely within the prohibitions of § 12(2) of the 1933 Act. On appeal, the defendants also argued that § 15(c) (1) of the 1934 Act controlled and barred suit under Rule

---

1. Defendants argue that these and other cases applying state statutes of limitations are not well reasoned and should be disregarded in favor of application of one of the limitations provisions found in the Securities Acts. The doctrine of borrowing state limitations statutes is firmly entrenched in this and other Circuits, and for that reason is not open for consideration by this court. See 3 Loss, Securities Regulation, p. 1771 *et seq.*

10b–5. In its reversal, the Court of Appeals rejected these arguments, concluding that "the remedies supplied by and under these acts are cumulative and not mutually exclusive." 401 F.2d at 51.

■ No meaningful distinction appears between the *Jordan* case and the instant action. The broad and virtually unlimited role which the Court there assigned to Rule 10b–5 has equal applicability here. Accordingly, plaintiffs are not limited to the provisions of § 9 or § 12(2), but may also bring this action pursuant to § 17 of the 1933 Act and §§ 10 and 15(c) of the 1934 Act. The motions to dismiss count 1 in its entirety because of the short statutes of limitations applicable to §§ 9 and 12(2) must therefore be denied. See also Klein v. Spear, Leeds, Kellogg, et al. (S.D.N.Y. 1969), 306 F.Supp. 743; Osborne v. Mallory, 86 F.Supp. 869 (S.D.N.Y.1949); Acker v. Schulte, 74 F.Supp. 683 (S.D.N.Y.1947).

■ Nor can this court conclude on the record before it that references to §§ 9 and 12(2) must be stricken from the complaint as barred by the short statutes of limitations. Defendants have filed extracts from the depositions of certain plaintiffs which indicate that they had knowledge of the criminal indictment soon after it was returned, and more than one year before the complaint was filed. These are, of course, not properly before the court on motions to dismiss. And plaintiffs should have a chance to rebut them by submitting evidentiary material. Defendants' motions to dismiss directed to this aspect of count 1 are therefore denied without prejudice to reassertion of the same issue by motion for summary judgment.

*Count 2—The Sherman Act*

■ In count 2 of the complaint plaintiffs reallege most of the allegations of count 1 and claim that defendants have violated section 1 of the Sherman Act, 15 U.S.C. § 1. No cases have been found which discuss the applicability of the anti-trust laws to securities market rigging schemes. For reasons to be stated, I have concluded that count 2 fails to state a cause of action.

As previously noted, section 9 of the 1934 Act expressly prohibits the type of stock market manipulation here alleged. The Sherman Act's prohibition, on the other hand, is addressed more generally to contracts, combinations and conspiracies "in restraint of trade or commerce." As stated in Montague v. Electronic Corporation of America, 76 F.Supp. 933, 936 (S.D.N.Y.1948), involving an apparent overlap of remedies under section 11 of the 1933 Act and section 10(b) of the 1934 Act:

"The settled rule of statutory construction is that, where there is a special statutory provision affording a remedy for particular specific cases and where there is also a general provision which is comprehensive enough to include what is embraced in the former, the special provision will prevail over the general provision, and the latter will be held to apply only to such cases as are not within the former. United States v. Chase, 135 U.S. 255, 260, 10 S.Ct. 756, 34 L.Ed. 117; Ex Parte United States, 226 U.S. 420, 424, 33 S.Ct. 170, 57 L.Ed. 281; Kepner v. United States, 195 U.S. 100, 125, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655; D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704."

To the same effect, see Jackson v. Cravens, 238 F. 117 (5th Cir. 1916); Jackson v. Chicago, R. I. & P. Ry. Co., 178 F. 432 (8th Cir. 1910); cf. N. L. R. B. v. Drivers, etc., Local Union No. 639, 362 U.S. 274, 291–292, 80 S.Ct. 706, 4 L.Ed.2d 710 (1960).

The anti-trust laws have been held inapplicable in other contexts when a more specialized remedy was provided. For example, the Court in Terminal Warehouse Co. v. Penn. R. Co., 297 U.S. 500, 56 S.Ct. 546, 80 L.Ed. 827 (1936), held that a shipper had no action for damages under the anti-trust laws against a competitor and the railroad which had granted preferences to the competitor, but was limited to relief

provided by the Interstate Commerce Act. Similarly, the anti-trust laws were held to be unavailing to a steamship line which sued its competitors, alleging a conspiracy to restrain trade. The Court held that the Shipping Act of 1916 provided a remedy which superseded the anti-trust laws. United States Nav. Co. v. Cunard S. S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932). Compare S. S. W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F.2d 658, 663 (D.C.Cir.1951), which succinctly summarized the law:

"Where specific damage provisions are contained in regulatory statutes, it has been held that there may be no recovery of treble damages under the antitrust laws."

And see Keogh v. C. & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922).[2]

The authorities relied upon by plaintiffs do not weaken this long line of authority. In United States v. Borden Co., 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1939), a criminal case holding that the anti-trust laws were not impliedly repealed by the Agricultural Marketing Agreement Act, the latter Act did not provide a damage remedy for the kind of conduct covered by the Sherman Act. See the 1955 Report of the Attorney General's Commission to Study the Anti-trust Laws, at 282. Similarly, in United States v. Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d

915 (1963), which held that the Bank Merger Act did not impliedly repeal the Clayton Act as it applied to bank mergers, the Court noted that the Bank Merger Act had no provision whatever for judicial proceedings and that the legislative history of that Act contained express statements to the effect that the applicability of the anti-trust laws was not affected. 374 U.S. at 351, 352, 83 S.Ct. 1715. Plaintiffs also point out that both the Securities Act of 1933[3] and the Securities Exchange Act of 1934[4] contain clauses preserving "rights and remedies that may exist at law or in equity." They argue that remedies under the Sherman and Clayton Acts, which predate the Securities Acts, are therefore saved by these provisions.

There are two primary difficulties with plaintiffs' arguments. First, it assumes that a remedy for stock market manipulation at one time existed under section 1 of the Sherman Act. Yet there are no cases to support this contention. And it appears that, at common law, a market manipulation scheme such as is here alleged constituted fraud and not a common law restraint of trade. Barret & Co., 9 S.E.C. 319, 328 (1941); Halsey, Stuart & Co., Inc., 30 S.E.C. 106 (1949); Berle, Stock Market Manipulation, 38 Col.L.R. 393 (1938). Because the interpretation of "restraint of trade" in the Sherman Act is to be given the meaning it had at common law, Apex Hosiery

---

2. Cases dealing with SEC or stock exchange rules or regulations allegedly violative of the anti-trust laws, see Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963); Kaplan v. Lehman Brothers, 371 F.2d 409 (7th Cir. 1967); Baum v. Investors Diversified Services, Inc., 286 F.Supp. 914 (N.D.Ill.1968), aff'd. 409 F.2d 872 (7th Cir. 1969), would only be relevant if plaintiffs based their claim for relief on the pegging of prices which was lawful under Commission regulations, which could occur under section 9(a) (6) of the 1934 Act. The language of the complaint indicates, however, that plaintiffs rely on section 9(a) (2), an unqualified prohibition, rather than on section 9(a) (6).

3. "Sec. 16. The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity."

4. "Section 28. (a) The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this title shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of. * * *"

**1192**

Co. v. Leader, 310 U.S. 469, 498, 60 S.Ct. 982, 84 L.Ed. 1311 (1940), the logical conclusion is that stock market manipulation schemes have never been within the coverage of the Sherman Act. And of course a non-existent remedy cannot be saved by the Securities Acts provisions cited above.

Moreover, as will be more fully discussed *infra*, the 1934 Act expressly limits recovery thereunder to actual damages, and the 1933 Act has been similarly construed. The language of the 1934 Act which limits damages is found immediately after the "saving clause" language,[5] indicating that only single damage remedies were to be preserved.[6] Thus, even if there once existed a Sherman Act cause of action for market manipulation, it was not saved by the later Securities Acts.

Finally, it is worth noting that a number of inconsistencies would result if plaintiffs were permitted to pursue both a Sherman Act and Securities Act cause of action. Beyond the differences in recoverable damages just referred to, there are significant differences in the governing statutes of limitation; compare section 13 of the 1933 Act and sections 9(e) and 18(c) of the 1934 Act with 15 U.S.C. § 15b, and in the provisions for attorney's fees, compare section 9(e) of the 1934 Act with 15 U.S.C. § 15. These differences are substantial and would encourage investors to bring suit under the Sherman Act. Certainly Congress could not have intended that the damage restrictions contained in the carefully drawn prohibitions against market manipulation in the 1934 Act could be evaded and effectively nullified by the simple expedient of invoking the Sherman Act.

*Count 3—Common Law Fraud*

Count 3 of the complaint incorporates the substantive allegations of count 1 but states that plaintiffs' right to recovery is based on common law fraud. Defendants' principal attack on this count is that, if counts 1 and 2 are dismissed, count 3 must also be dismissed since it contains no independent grounds of jurisdiction. Since this court has held, *supra*, that count 1 states a cause of action, defendants' contention is without merit. This court has pendent jurisdiction under the doctrine enunciated in United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Certain defendants also claim that plaintiffs who have had no direct dealings with defendants will be unable to prove the elements of fraud necessary to permit recovery. The issues thus raised are factual, however, and cannot be resolved on the pleadings.

*Motion to Dismiss Plaintiffs Robert and Sandra Schaefer*

The plaintiffs who initially filed this complaint are Robert and Sandra Schaefer. Since that time other named plaintiffs have been added by motion. Certain defendants have now moved to dismiss the Schaefers from the complaint, claiming that they signed a covenant not to execute any judgment reached herein against certain defendants and that this instrument releases all defendants from liability to the Schaefers.

The Schaefers allege in the complaint that they have suffered out of pocket losses of $4,572.99 in their dealings in Hercules Galion stock. The covenant not to execute, involving six defendants, states that the Schaefers have received $9,000 and that they therefore will not execute any judgment against these six parties. Although the covenant expressly states that no other defendants are thereby released, the law is clear that when the consideration for release from one defendant fully compensates the

---

5. For the pertinent text, see note 4, supra.

6. See House Report 1383, accompanying H.R. 9323, 73rd Congress, Second Session, relating to what became section 28:

"This subsection reserves rights and remedies existing outside of those provided in the Act, but limits the total amount recoverable to the amount of actual damages."

plaintiff for his alleged injury, all jointly liable defendants are also released. Wagner v. C. & A. R. R. Co., 265 Ill. 245, 106 N.E. 809 (1914); Husky Refining Co. v. Barnes, 119 F.2d 715 (9th Cir. 1941); Rector v. Warner Bros. Pictures, 102 F.Supp. 263 (S.D.Cal.1952). The issue therefore becomes whether the $9,-000 payment constituted full compensation to plaintiffs.

■■ Under the Securities Acts, it is now authoritatively established that only actual, and not punitive, damages are recoverable. Section 28(a) of the 1934 Act so provides, see Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. 1968), cert. den., Troster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766, and the same limitation has been placed on the provisions of the 1933 Act by judicial interpretation. Globus v. Law Research Services, Inc., 418 F.2d 1276 (2d Cir. 1969); Avern Trust v. Clarke, 415 F.2d 1238 (7th Cir. 1969). Moreover, "actual damages" under the Acts have been uniformly held to be limited to out of pocket losses, and do not include any speculative loss of profits. Kohler v. Kohler Co., 208 F.Supp. 808, 825 (E.D.Wis.1962), aff'd. 319 F.2d 634 (7th Cir. 1963); Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 303 F.2d 527, 533 (10th Cir. 1962); Chaney v. Western States Title Insurance Company, 292 F.Supp. 376 (D.Utah, 1968).

■ The Schaefers have received more than their out of pocket losses, measured by the difference between the allegedly inflated prices they paid for the securities in suit and the amount they received on their subsequent sale. Therefore, they have been fully compensated for damages sustained by the alleged violations of the Securities Acts, and count 1 must be dismissed as to them.

■ The Schaefers also seek punitive damages under the common law count. However, as previously noted, section 28 (a) of the 1934 Act limits recovery to single damages. Although common law remedies are expressly preserved, the

conclusion is unavoidable that common law damage rules permitting recovery in excess of actual damages have not been saved. Cf. Meisel v. North Jersey Trust Company of Ridgewood, N. J., 216 F. Supp. 469 (S.D.N.Y.1963). Because the 1933 and 1934 Acts are to be construed *in pari materia*, Globus v. Law Research Service, Inc., *supra*, 418 F.2d at 1286, and cases cited therein, the result is that punitive damages may not be recovered under common law doctrines for conduct actionable under the Securities Acts counts. Therefore, having been fully compensated, the Schaefers must be dismissed from the complaint.

*Motions to Dismiss Particular Defendants*

■ Defendant Peltz has alleged in his motion to dismiss that the complaint neither shows any causal connection between his actions and plaintiffs' injuries nor adequately charges that he was a participant in a conspiracy. But the complaint charges that Peltz, as a registered representative for Hertz, Warner & Co., agreed with the other defendants to artificially raise the price of the securities, received money from other defendants to induce their customers to buy Hercules Galion stock, and concealed these payments from buyers of this security. The complaint alleges an overall conspiracy and a number of overt acts—this is sufficient to withstand a motion to dismiss.

■ Peltz' causation argument amounts to a contention that no privity exists between himself and the plaintiffs. However, of the statutory provisions relied upon only § 12(2) expressly limits recovery to those in privity with the defendants. And the cases state that privity is not required for an action to be maintainable under Rule 10b–5. Brennan v. Midwestern United Life Insurance Company, 259 F.Supp. 673, 682–683 (N. D.Ind.1966), and cases cited therein; Geo. H. McFadden & Bro., Inc. v. Home-Stake Production Co., 295 F.Supp. 587 (N.D.Okl.1968). Whether causation of these plaintiffs' injuries can be charged

# 1194

to Peltz, either alone or as part of a conspiracy, is a matter which must await trial for its resolution.

 Defendants Morris and Eva Childs have also argued in support of their motion to dismiss that they are not sufficiently implicated by the charges made in the complaint. But they are charged with membership in the conspiracy, with transferring funds to other defendants to be used pursuant to an agreement to double the price of the stock, and with using funds borrowed from another defendant to purchase such securities. Whether the Childs were participants in the conspiracy, and whether these overt acts were innocent or culpable, are factual questions which cannot now be answered. The pleading as it stands, however, is sufficient to state a cause of action.

The First National Bank of Lincolnwood has moved to dismiss, contending that it cannot be held accountable for the criminal acts of its employees and directors. Along with the Bank, the chairman of its board of directors, two other directors and its president are also named as defendants. The Bank is named in the general conspiracy allegations of the complaint. Its officer and directors are charged with devising the scheme to inflate the price of Hercules Galion stock, and with taking various steps to implement it. The Bank is alleged to have loaned money to numerous principals in the conspiracy for the purpose of increasing the amount of trading in the securities.

Whether the Bank is chargeable as a principal participant in the conspiracy, whether it is liable on a theory of *respondeat superior* because of actual or apparent authority held by its employees and directors, or whether it will escape liability due to the nature of these individuals' alleged actions, are questions which involve the application of broad legal doctrines to the special facts of the case. See Continental Baking Company v. United States, 281 F.2d 137, 149 (6th Cir. 1960); Carroll v. First National Bank of Lincolnwood, 413 F.2d 353 (7th Cir. 1969); Fletcher, Cyclopedia of the Law of Private Corporations (1961), Vol. 10, p. 433; Restatement of Agency Second, § 219. The complaint on its face contains sufficient allegations to withstand the Bank's motion to dismiss.

## Brokerage House Separate Defenses

The court is grateful to the brokerage house defendants for presenting briefs, at its request, in support of their separate defenses. No motions are pending as to these issues. The court wishes only to point out that the questions of *respondeat superior* which are raised, and the questions relative to the extent of liability, if any, pursuant to the "controlling persons" provisions of the Securities Acts (section 15 of the 1933 Act and section 20(a) of the 1934 Act), are matters which must await further factual development for their resolution.

## Conclusion

For the reasons heretofore assigned, an order has been entered today dismissing count 2 in its entirety, dismissing plaintiffs Robert and Sandra Schaefer from the action, and denying all motions to dismiss in all other respects.