MERCANTILE HOLDINGS, INC., Plaintiff, v. CHARLES KEESHIN *et al.*, Defendants (Thomas Chuhak, Adm'r with the Will Annexed of the Estate of Elsie Keeshin, Deceased, Counterplaintiff-Appellant; Benjamin Schaider *et al.*, Indiv. and as partners d/b/a American Farm Partnership, *et al.*, Counterdefendants-Appellees).

First District (3rd Division)   No. 1—88—0590

Opinion filed August 30, 1989.

Chuhak, Tecson, Kienlen, Feinberg & Grasso, P.C., of Chicago (John L. Kienlen, of counsel), for appellant.

Louis B. Garippo, Ltd., of Chicago (Louis B. Garippo and Susan G. Feibus, of counsel), for appellees.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Mercantile Holdings, Inc., filed suit in the circuit court of Cook County to obtain payment of a loan made by its predecessor in interest, Mercantile National Bank of Chicago (Mercantile), to Charles and Elsie Keeshin. Plaintiff joined as defendants in that suit Charles and Elsie, Benjamin Schaider and Seymour Keeshin (Schaider and Keeshin), individually and d/b/a American Farm Partnership (AFP), and City National Bank & Trust Company of Rockford (CNB). Upon Elsie's death, Thomas Chuhak, as the administrator of her estate, was substituted as a party defendant. Chuhak (hereinafter counterplaintiff) then filed a counterclaim against Schaider and Keeshin, individually and d/b/a AFP, and CNB. After plaintiff settled its claims against Schaider and Keeshin and agreed to dismiss its action against all defendants, the trial court: (1) granted counterdefendants summary judgment on the counterclaim; (2) denied counterplaintiff summary judgment; and (3) denied counterplaintiff's motion to reconsider. From these orders, counterplaintiff appeals.

In 1974, Mercantile loaned Charles and Elsie $125,000. The loan was secured by marketable securities owned by Elsie. In 1978, Charles assigned all of his beneficial interest in CNB land trust No. 1097 to AFP subject to certain debts which AFP assumed and agreed to pay, including the Mercantile loan. Charles also agreed to direct CNB to deliver a trustee's deed of the trust *res* to AFP upon satisfactory proof of payment of all the debts assumed by AFP. Subsequently, upon Charles' direction, CNB did issue its trustee's deed to AFP.

In the complaint dismissed pursuant to its settlement with Schaider and Keeshin, plaintiff had alleged Schaider's and Keeshin's breach of the assignment agreement with Charles in that they did not pay the debt due plaintiff before obtaining the trustee's deed from CNB. Plaintiff also alleged CNB's breach of the letter of direction from Charles to convey the trust *res* to Schaider and Keeshin in that it issued its trustee's deed to them without first receiving the satisfac-

tory proof, required by the assignment agreement, of their payment of the debt owed plaintiff.

In his counterclaim, counterplaintiff alleged that Mercantile sold the securities owned by Elsie, which it held as collateral for the loan to Elsie and Charles, due to Schaider's and Keeshin's failure to pay the debt as required by the assignment agreement. Counterplaintiff also alleged, like plaintiff, that CNB breached the terms of the letter of direction from Charles by issuing its trustee's deed without the proof required by the assignment agreement of payment of the debt owed plaintiff. Counterplaintiff's theory of recovery against counterdefendants was that Elsie was a third-party beneficiary of both the assignment agreement and the letter of direction.

Counterdefendants denied the material allegations of the counterclaim. They also asserted several affirmative defenses to the counterclaim. Schaider and Keeshin asserted, *inter alia*, that Charles, Seymour Keeshin and Geraldine Schaider entered into a loan repayment agreement with Elsie and her son, Jerome L. Kohn. They alleged that in that agreement Elsie forgave repayment of various loans to Charles in the amount of $250,000 in exchange for Charles' conveyance to Elsie of his interest in a condominium which they owned as joint tenants.

Both counterdefendants and counterplaintiff eventually moved for summary judgment. In granting counterdefendants' motion and denying counterplaintiff's motion, the trial court reasoned that counterplaintiff was estopped from enforcing the assignment agreement between Charles and Schaider and Keeshin because Elsie's estate had received the benefit of the loan repayment agreement. The court also reasoned that CNB, as land trustee, owed no duty and therefore breached no duty to Elsie in conveying the property held in trust for Charles to Schaider and Keeshin without first obtaining the proof of payment required by the assignment agreement.

OPINION

On appeal, counterplaintiff first contends that he is entitled to summary judgment as a matter of law against Schaider and Keeshin because they breached the assignment agreement with Charles, of which Elsie was a third-party beneficiary.

Schaider and Keeshin do not dispute that Elsie was an intended beneficiary of the assignment agreement and therefore had a right to sue them for breaching that agreement. Nor could they seriously do so. (See, *e.g.*, 4 A. Corbin, Contracts §906, at 627-28 (1951).) Rather, they chiefly assert that the loan repayment agreement between Elsie,

by her son, and the other Keeshins extinguished any debt which they owed her under the assignment agreement.

Under that agreement, Elsie agreed to accept Charles' interest in a condominium they owned as joint tenants as repayment in full of loans to Charles from time to time totalling $250,000 "and to release and discharge Charles, his personal representatives and heirs, from any and all liability[,] cost and expense in connection with" the loans.

█ Schaider and Keeshin assert that the loan repayment agreement, by releasing Charles from his liabilities to Elsie, also released them as Charles' "assignees" from any liabilities to Elsie. As support, they note that a release of one of two or more joint and several debtors releases all unless the creditor reserves his right against those not expressly released (*United States v. Wainer* (7th Cir. 1954), 211 F.2d 669) and that a release of one joint tortfeasor, who adequately compensates the releasor's injury, releases all other joint tortfeasors (*Schaefer v. First National Bank* (N.D. Ill. 1970), 326 F. Supp. 1186; *Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 75 N.E.2d 135).

██ █ The loan repayment agreement does not expressly release Charles' "assigns" or "assignees" from any liability to Elsie for the payment of any sums lent to Charles. Illinois courts restrict the language of a general release to the thing or things intended to be released and decline to construe generalizations to defeat a valid claim not then in the minds of the parties. (*Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236, 371 N.E.2d 888.) As such, we will not read the term "assigns" or "assignees" into the loan repayment agreement to effectuate a release of Schaider and Keeshin from any liability to Elsie.

In addition, their assertion that they were released from any liability to Elsie as Charles' assigns is incorrect as a matter of fact. Schaider and Keeshin imply that, as Charles' assignees, they were jointly and severally liable to Elsie along with Charles for obtaining the release of her securities by repaying the Mercantile loan. That is the basis of their conclusion that the loan repayment agreement, by releasing Charles, also released them from any liability to Elsie for payment of the Mercantile loan. This reasoning reflects a fundamental misapprehension of the assignment agreement, which provides:

> "Charles Keeshin *** does hereby assign, transfer and set over unto American Farm Partnership *** all of his beneficial interest in *** Trust No. 1097 of [CNB], the corpus of which *** consists of real estate ***.
>
> The assignment of the beneficial interest in said trust *** is subject to the following indebtedness which assignee herein as-

sumes and agrees to pay:

\* \* \*

(c) Mercantile National Bank of Chicago, $123,390.78, together with interest in the sum of $1064.77, totalling $124,455.75.

\* \* \*

## ACCEPTANCE

AMERICAN FARM PARTNERSHIP \*\*\* hereby accepts the assignment of CHARLES KEESHIN with the terms and conditions set forth above and [does] hereby assume and agree to pay the within stated indebtedness as part of the consideration thereof."

■ The language of the assignment agreement reveals that, as a factual matter, the only thing "assigned" therein was Charles' interest in the land trust. The agreement did not, as Schaider and Keeshin imply, assign to them Charles' liability to Mercantile or to Elsie. Thus, the loan repayment agreement, even if construed to release Charles' assigns or assignees from his debts to Elsie, had no effect whatever on Schaider's and Keeshin's liability to Elsie for breaching the assignment agreement.

Rather than being assigned the liability for the Mercantile loan in the assignment agreement, Schaider and Keeshin "assumed" that liability. This seemingly insignificant distinction, in reality, had quite significant ramifications.

The fact that Schaider and Keeshin "assumed" the liability for the Mercantile loan renders their assertion of joint and several liability to Elsie along with Charles also incorrect as a matter of law. An assignment by Charles to Schaider and Keeshin of his liability for the Mercantile loans would not have changed the fact that he was primarily liable therefor. (72 C.J.S. *Principal & Surety* §38 (1987).) In contrast, Schaider's and Keeshin's assumption of that liability rendered them primarily liable therefor and Charles only secondarily liable as their surety.

■ A third party's assumption, without novation, of a principal obligation under a contract gives rise to a suretyship relation between the principal obligor and the third party. (Restatement of Security, Division II, Scope Note, at 225-26, §83(c) (1941); Restatement (Second) of Contracts §119, comment *a*, at 305 (1981); 72 C.J.S. *Principal & Surety* §35(1987).) "Where a suretyship exists, it is the duty of the principal to the surety to satisfy the surety's obligation by performing his own duty to the creditor, in the absence of a defense \*\*\* between himself and the creditor, which is also available to the surety." Re-

statement of Security §103, at 274 (1941).

Moreover, it is the original obligor under a contract who arranges for the assumption of his obligation by a third party who becomes the surety and not *vice versa*. (See, *e.g.*, Restatement of Security §83, Comment on Clause (c), at 243 (1941); Restatement (Second) of Contracts §119, comment *a*, at 305; §302, comment *b*, at 440; §304, comment *c*, at 449; §310, comment *a*, at 462 (1981).) In addition, while a surety and a principal may be jointly and severally liable to an obligee (72 C.J.S. *Principal & Surety* §71 (1987)), we do not believe that can be the case where their duties to the obligee arise from different contracts and thus separate undertakings.

■ In view of the foregoing, we conclude that the assignment agreement between Charles and Schaider and Keeshin created a suretyship obligation in the former and an independent and separate primary obligation in the latter. As such, the loan repayment agreement between Elsie and Charles merely released Charles from any liability as Schaider's and Keeshin's surety. (See 72 C.J.S. *Principal & Surety* §173 (1987).) That agreement did not, contrary to their assertion, implicitly release Schaider and Keeshin, who were at that time the principal obligors to Elsie for obtaining the release of her securities by repaying the Mercantile loan. Absent such a release, Elsie had a right of recourse against them as her principal debtors, notwithstanding her release of Charles as their surety. See Restatement (Second) of Contracts §123, comment *a*, at 308; §302, comment *b*, at 440; §304, comment *c*, at 449; §310.

Given the foregoing conclusion, we need not address Schaider's and Keeshin's contention that the loan repayment agreement encompassed Charles' debt to Elsie for her pledge of stock as collateral for the Mercantile loans. Even if it did, the loan repayment agreement had no effect on their primary liability to Elsie for payment of the Mercantile loans and release of her stock. Nor need we address counterplaintiff's attack upon the loan repayment agreement on the basis of the parties' stipulation therein that Elsie was incompetent when Jerome Kohn executed it as her purported agent. We likewise need not address the contention that, as the trial court found, Elsie was estopped from avoiding the loan repayment agreement because she accepted the benefit of the bargain and would be unjustly enriched. As already noted, the loan repayment agreement could not, as a matter of fact or law, release Schaider and Keeshin from any liability to Elsie. Therefore, the fact that Elsie accepted the benefit of the bargain with Charles was irrelevant to her right to proceed against them for breaching the assignment agreement.

Under all the facts and the applicable law, counterplaintiff was entitled to summary judgment as a matter of law on his counterclaim against Schaider and Keeshin.

Counterplaintiff next contends that he was entitled to summary judgment as a matter of law against CNB because of its breach of the letter of direction from Charles, of which Elsie was also a third-party beneficiary. Counterplaintiff asserts that CNB breached a duty to Elsie by failing to obtain satisfactory proof of payment of the Mercantile loans before conveying the *res*, which it held in trust for Charles, to Schaider and Keeshin.

●7 For a third party to enforce a contract, an intent to benefit that party must be shown. The terms of the contract control the rights of the third party. (*Midwest Concrete Products Co. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 418 N.E.2d 988.) That is, the liability of a promisor cannot be extended by the third party beyond the terms of the contract or enlarged merely on the ground that the circumstances justify further liability. *Midwest Concrete*, 94 Ill. App. 3d 394, 418 N.E.2d 988.

The letter of direction from Charles to CNB stated:

> "The trustee is directed to deliver said trustee's deed *** to the grantee therein named *pursuant to the directions and provisions* of an assignment from [Charles Keeshin] as assignor to [AFP] *** which said assignment is attached hereto *** *and made a part of this letter of direction*." (Emphasis added.)

In addition to the language previously quoted, the assignment agreement made a part of the letter of direction provided, in pertinent part:

> "Assignor agrees to execute and deliver to assignee a letter of direction to [CNB] as trustee of Trust No. 1097, its trustees deed [*sic*] conveying said real estate to [AFP] *** upon the following conditions:
> ***
> (b) Upon satisfactory proof of payment of *** the *** indebtedness herein assumed by the assignee."

■ Preliminarily, we agree with counterplaintiff that the italicized language of the letter of direction incorporated the assignment agreement into the letter of direction. (*Cf. Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 189, 454 N.E.2d 249 (the words "All of the terms and conditions of said mortgage are hereby incorporated in and made a part of this note" incorporated due-on-sale clause in mortgage into the mortgage note).) As such, the provisions of the assignment agreement were as much a

part of the letter of direction as if expressly written in it and could not be ignored by CNB. (See *Preski v. Warchol Construction Co.* (1982), 111 Ill. App. 3d 641, 645, 444 N.E.2d 1105.) Therefore, the letter of direction obligated CNB to obtain the proof required by the assignment agreement of payment of the debts listed therein before conveying the trust *res* to Schaider and Keeshin.

■ This conclusion notwithstanding, given the rules concerning third-party beneficiaries, counterplaintiff does not convince us that Elsie was an intended third-party beneficiary of the letter of direction. Rather, we agree with CNB that, while Elsie was a third-party beneficiary of the assignment agreement, nothing in the letter of direction reveals that she was a direct and intended beneficiary of that agreement. CNB cannot be liable to Elsie simply because its adherence to the terms of the assignment agreement as incorporated into the letter of direction would have benefited her.

While we find it reasonable to construe the assignment agreement as intending to benefit Elsie, given Schaider's and Keeshin's failure to allege otherwise, we do not believe it is reasonable to so construe the letter of direction. Counterplaintiff offers no reason why CNB was bound to know or can reasonably be inferred to know, unlike Schaider and Keeshin, that payment of the Mercantile loans would benefit Elsie. Certainly, nothing in the assignment agreement would have revealed that fact to CNB. Moreover, that knowledge was not required by CNB to perform its obligations under the letter of direction. Nor was it the type of knowledge which would ordinarily come to a trustee in the execution of such a letter of direction.

Moreover, we disagree with counterplaintiff that CNB's adherence to the terms of the letter of direction would have *directly* benefited Elsie. (See *Midwest Concrete Products Co. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 396-97, 418 N.E.2d 988, quoting 17 Am. Jur. 2d Contracts §304, at 729-30 (1964) (benefit to third person must at least be direct result of performance of the contract).) That is, we disagree that the release of Elsie's stock as the security for the Mercantile loans would have directly resulted from CNB's execution of the letter of direction in accordance with the assignment agreement. Otherwise stated, we do not believe that CNB's breach of the terms of the letter of direction proximately caused Elsie's damages. Had CNB properly executed the letter of direction, Schaider and Keeshin would merely not have received a trustee's deed for the land held in trust by CNB for Charles unless and until they paid the debts listed in the assignment agreement. However, nothing that CNB was required to do under the letter of direction would have compelled Keeshin and

Schaider to pay the underlying Mercantile debt for which Elsie pledged her securities as collateral. As such, the proximate cause of Elsie's damage was Schaider's and Keeshin's failure to pay the Mercantile debt.

Finally, *In re Pritchett* (N.D. Ill. 1981), 8 Bankr. 647, the only case counterplaintiff cites in support, is of no avail to him. In *Pritchett*, the Illinois Department of Mental Health contested the dischargeability in bankruptcy of a debt owed it by a social security recipient which her son, her representative benefits payee, had refused to pay. The recipient's benefits were paid to her son in a fiduciary capacity and he was obligated to pay the recipient's health care bills. In holding that the department could sue the son in his fiduciary capacity, the court said of him:

> "After he has committed a breach of trust, he is liable to anybody who has been injured by his breach of trust, either the beneficiary of the trust or the creditor of the beneficiary." (*Pritchett*, 8 Bankr. at 650.)

*Pritchett* is unavailing to counterplaintiff for the simple reason that Elsie was not proximately injured by CNB's breach of trust. That being the case, she, unlike the *Pritchett* plaintiff, had no cause of action against the trustee.

For all the foregoing reasons, we: (1) reverse the summary judgment for Benjamin Schaider and Seymour Keeshin and the denial of counterplaintiff's motion for summary judgment against them; (2) enter summary judgment for counterplaintiff against Schaider and Keeshin; and (3) affirm the summary judgment for City National Bank of Rockford.

Reversed in part; affirmed in part.

RIZZI and WHITE, JJ., concur.